United States District Court
Southern District of Texas
**ENTERED**
September 21, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Civil Action No.  4:20-cv-03185 |
| Plaintiff, | |
| v. | |
| MAYCO ALEXIS MALDONADO GARCIA, CESAR CASTANEDA, JOEL CASTANEDA GARCIA, and RODRIGO JOSE CASTRO MOLINA, jointly d/b/a GLOBAL TRADING CLUB, | |
| Defendants. | |

**ORDER OF FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, RESTITUTION, CIVIL MONETARY PENALTY, AND OTHER <u>EQUITABLE RELIEF AGAINST DEFENDANT RODRIGO JOSE CASTRO MOLINA</u>**

## I.     INTRODUCTION

On September 11, 2020, Plaintiff Commodity Futures Trading Commission

("Commission" or "CFTC") filed a Complaint for Injunctive Relief, Restitution, Civil Monetary

Penalties and Other Equitable Relief ("Complaint" or "Compl.") against Defendant Rodrigo Jose

Castro Molina ("Castro"), and others jointly doing business as Global Trading Club.  (ECF No.

1)  The Complaint sought injunctive and other equitable relief, as well as the imposition of civil

penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26 (2018), and

the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190.10 (2021).

The Complaint alleges that from at least August 2016 through October 2017 (the "Relevant Period") Castro, Mayco Alexis Maldonado Garcia ("Maldonado"), Cesar Castaneda, and Joel Castaneda Garcia (collectively, "Defendants"), operating under the name "Global Trading Club" ("GTC"), fraudulently solicited at least 27 customers to deposit at least $989,000 in order to speculate in price movements of Bitcoin, a digital asset. (Compl. ¶¶ 1-2)  The Complaint further alleges that Defendants solicited customers using multiple methods, including a web site, YouTube videos, social media, and in-person marketing presentations. (Compl. ¶ 17-21)  Defendants misrepresented to actual and potential customers the purportedly extensive trading experience of traders employed by GTC, and the expected earnings and bonuses that GTC marketing documents guaranteed for all customers. (Compl. ¶¶ 1 and 22-26)  To conceal their fraud, Defendants caused misleading trading statements to be posted online.  These misleading trading statements did not accurately reflect the Bitcoin trading purportedly undertaken by Defendants. (Compl. ¶¶ 3 and 27)  The Complaint alleges that Defendants' conduct violated Section 6(c) of the Commodity Exchange Act (the "CEA"), 7 U.S.C. § 9(1) (2018), and CFTC Regulation 180.1, 17 C.F.R. §180.1 (2021). (Compl. ¶ 5)

## II.    PROCEDURAL HISTORY

On September 11, 2020, the Commission filed its Complaint. (ECF No. 1)  On December 31, 2020, the Commission served Castro with the Complaint. (ECF No. 30.)  Castro failed to answer or otherwise respond to the Complaint; accordingly, Plaintiff applied for entry of default pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 57)  On August 12, 2021, the Court Clerk entered default as to Castro. (ECF No. 58)  Thereafter, the Court directed

2

Plaintiff to move for default judgment against Castro on or before September 7, 2021.  (ECF No. 59, 61)

The Commission has now submitted its Motion for Entry of Default Judgment, Permanent Injunction, Restitution, Civil Monetary Penalty, and Other Equitable Relief Against Castro ("Motion") pursuant to Fed. R. Civ. P. 55(b)(2), as well as a supporting Memorandum of Law ("Memorandum") and attachments thereto.  (ECF Nos. 62 and 63)  The Court has considered carefully the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Motion, and the Memorandum.  Being fully advised in the premises, the Court hereby:

**GRANTS** the Commission's Motion and enters the following Findings of Fact and Conclusions of Law finding Castro liable as to all violations as alleged in the Complaint. Accordingly, the Court now issues the following Order which: (i) determines that Castro violated Section 6(c)(1), 7 U.S.C. § 9(1) (2018); and Regulation 180.1(a), 17 C.F.R.§ 180.1(a) (2020); (ii) imposes on Castro Street a permanent injunction; and (iii) orders Castro to pay restitution and a civil monetary penalty.

### III.    FINDINGS OF FACT

#### A.    The Parties

1.      Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1-26 (2018) and the Commission Regulations promulgated thereunder, 17 C.F.R. pts. 1-190 (2021).

2.      Defendant Rodrigo Jose Castro Molina is an individual residing in Houston, Texas.  He is also known by the names Rodrigo Castro, Jose Molina, and Jose Castro.  He has never been registered with the CFTC.

**B.      Defendants Solicited Customers to Purchase Bitcoin with GTC**

3.      In 2016, Defendants began to market a new business called GTC.  The stated purpose of GTC was to offer customers an opportunity to profit from speculative trading that was based upon price fluctuations in Bitcoin.

4.      Although Defendants marketed Bitcoin trading using the GTC name, GTC did not exist as a separate legal entity.

5.      During the Relevant Period, Defendants continued to promote the GTC business using numerous channels, including a web site, www.gtcexchange.com ("GTC web site"); a smartphone app called "GTC Digital"; videos posted to a YouTube channel; and a Facebook page called Global Trading Club.  The GTC web site and Facebook page presented Castro as a key leader in the company.  On the GTC web site, Castro was listed a member of GTC's "Master Council Leadership"; on the GTC Facebook page and Castro's personal Facebook page, Castro was called a "Financial Advisor Bitcoin" and a "Master Council" for GTC.

6.      Additionally, throughout the Relevant Period, Defendants made representations directly to actual and potential customers during GTC "cryptocurrency" seminars held by Defendants in Houston and elsewhere in the United States.  During these seminars, Defendants shared a GTC marketing presentation, which contained the same representations found on the GTC web site and in the YouTube videos.

7.      The GTC seminars conducted by Castro included the following:

- In September 2016, Castro and Maldonado spoke with potential customers in Los Angeles, and Castro spoke with potential customers in Las Vegas.  Castro advertised these seminars in Spanish-language posts on Facebook;

4

- In September 2016, Castro, Cesar Castaneda, Joel Castaneda Garcia, and Maldonado hosted a seminar at Drury Inn and Suites in Houston. Castro advertised the seminar in a Spanish-language post on Facebook.

- In November 2016, Castro spoke with potential customers in Miami. He advertised this seminar in a Spanish-language post on Facebook, as well as a Spanish-language multilevel marketing web site, www.universomlm.com, in which Castro is referenced as a "socio fundador" (translated as "founding member") and "Master Internacional" (translated as "International Master") of GTC. Castro also purported to achieve "un explosivo crecimiento en apenas dos meses" (translated as "explosive growth in two short months") for GTC; and

- In December 2016, Defendants hosted a GTC holiday party for potential customers at a hotel in Houston. Maldonado, Cesar Castaneda, Joel Castaneda Garcia, and Rodrigo Castro attended.

8. Defendants marketed the GTC business to non-English-speaking residents of the United States. The GTC web site highlighted Korean- and Spanish-speaking representatives of the business. Maldonado circulated Spanish and Korean translations of the GTC marketing presentation to Castro and the other Defendants, as well as other individuals who marketed the GTC business on behalf of Defendants. The YouTube videos were also translated into Spanish, Korean, and other languages.

## C.  Defendants Made False and Misleading Representations when Soliciting GTC Customers

9. The GTC web site, YouTube videos, marketing presentations, and/or other GTC marketing materials included the following representations:

- GTC employed "over 75 master traders";

- These traders had years of trading experience in "crypto currency" trading;

- GTC customer "capital is continuously being traded in a real time environment, by our expert traders and cutting edge trading robots 24 hours a day, 7 days a week."

- "With our automated trading software and monitoring system, trades are done automatic [sic] for members with no risk. Finally the best way to trade with no experience. *Put your bitcoin to work for you'*." (emphasis in original)

10.     The GTC marketing materials further represented that customers could join one of multiple GTC membership levels, ranging from $250 ("Entrepreneur" level) to $31,000 ("Founder Trader" level).  The GTC marketing materials set forth guaranteed specific daily earnings, which would increase based on the customer's membership level at GTC.

11.     The GTC marketing materials offered further earnings through its multi-level marketing structure, under which customers could earn additional money by referring new customers to GTC.  Customers were promised a cash bonus for each direct referral, in the amount of 20 percent of the deposit made by the referred customer.  Customers were further offered bonuses for indirect referrals and a "binary matching bonus" for multi-level marketing "teams."  The amount of the bonuses increased if customers made additional deposits with GTC, which placed them at a higher membership level within GTC.

12.     Castro made representations similar to those set forth in Paragraphs 9-11 above during the GTC seminars, and other customer meetings described in Paragraphs 6-8 above, and which Castro advertised on social media.

13.     The representations set forth in Paragraphs 9-11 are false.  Defendants employed no traders, and neither created nor used any trading robots.   Accordingly, GTC customer capital was not "being traded in a real time environment, by our expert traders and cutting edge trading robots 24 hours a day, 7 days a week."  Additionally, one or more GTC customers did not receive any daily earnings or referral bonuses.

14.     Defendants concealed their fraudulent conduct by causing misleading trading statements to be posted online.  GTC customers could access the online statements by logging into a web site and/or the GTC Digital app, using a username and password.   Once logged in, customers could see how much money they'd earned from GTC's purported trading on their

6

behalf.  These misleading trading statements did not accurately reflect the Bitcoin trading

purportedly undertaken by Defendants and led at least certain customers to believe they were

earning significant profits from their Bitcoin trading.

## IV.    CONCLUSIONS OF LAW

**A.    Jurisdiction and Venue**

15.     The Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (federal

question jurisdiction) and 28 U.S.C. § 1345 (2012) (jurisdiction over civil actions commenced by

the United States or by any agency authorized to sue by Act of Congress).

16.     Castro and his co-defendants solicited customers to trade Bitcoin, which is a

"commodity" under Section 1a(9) of the Act, 7 U.S.C. §1a(9) (2018).  *See CFTC v. Reynolds*,

No. 1-19-cv-05631, 2021 WL 796683-MKV, at *5 (S.D.N.Y. Mar. 2, 2021) ("Virtual currencies

such as Bitcoin are encompassed in the definition of 'commodity' under Section 1a(9) of the Act,

7 U.S.C. § 1a(9) (2018).") (citations omitted); *CFTC v. Laino Grp. Ltd.,* No. 4:20-cv-03317, 2021

WL 2886013, at 12 (S.D. Tex. June 30, 2021) (Hittner, J.) (citing *Reynolds,* concluding that Bitcoin

is a commodity under Section 1a(9)); *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y.

2018) ("Virtual currencies can be regulated by CFTC as a commodity."); *CFTC v. McDonnell*,

332 F. Supp. 3d 641, 650–51 (E.D.N.Y. 2018) (entering judgment against Defendant following

bench trial and finding that bitcoin and litecoin are commodities); *CFTC v. My Big Coin Pay,*

*Inc.*, 334 F. Supp. 3d 492, 495–98 (D. Mass. 2018) (denying motion to dismiss; determining that

a non-bitcoin virtual currency is a "commodity" under the Act) (citing *United States v. Brooks*,

681 F.3d 678, 694-95 (5th Cir. 2012)).

17.     Thus, the conduct and transactions at issue in this case are within the Court's

jurisdiction pursuant to 7 U.S.C. § 13a-l (2018), which authorizes the Commission to seek

injunctive and other relief in district court against any person whenever it shall appear to the

Commission that such person has engaged, is engaging, or is about to engage in any act or

practice constituting a violation of the Act or any rule, regulation, or order thereunder. Finally,

the Court has personal jurisdiction over the Defendant because he resides and transacted business

within this District and otherwise engaged in acts and practices in violation of the Act and

Regulations in this District, among other places. Venue properly lies with this Court pursuant to

7 U.S.C. § 13a-1(e) (2012) for the same reason.

**C.    Default Judgment**

18.    Fed. R. Civ. P. 55 authorizes a default judgment when "a party against whom a

judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ." Fed. R.

Civ. P. 55(a); *see also New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) ("A

default occurs when a defendant has failed to plead or otherwise respond to the complaint within

the time required by the Federal Rules"). A default judgment—issued by a court pursuant to

Fed. R. Civ. P. 55 (b)(2) after the court clerk's entry of default—while not favored, is within the

trial court's sound discretion (*Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)), and in cases of

willful default, not subject to appellate reversal. *Lacy*, 227 F.3d at 292 ("A finding of willful

default ends the inquiry [of whether good cause to set aside a default exists], for when the court

finds an intentional failure of responsive pleadings there need be no other finding") (internal

quotations and footnote omitted).

19.    District courts in this Circuit at times have used a three-step analysis in

adjudicating default judgment motions: (1) whether default judgment is procedurally proper,

based upon six factors identified in identified in *Lindsey v. Prive Corp.* 161 F.3d 886 (5th Cir.

1998); (2) if procedurally proper, "whether the plaintiff's claims are substantively meritorious;"

and (3) if substantively meritorious, whether the requested relief is appropriate. *CFTC v. Ramirez*, No. 4:19-cv-140, 2019 WL 4198857, at *7 (S.D. Tex. July 17, 2021) (Ellison, J.) (quoting *Travelers Cas. and Sur. Co. of Am. v. HighMark Constr. Co., LLC*, No. 7:16-cv-00255, 2018 WL 4334016, at *2 (S.D. Tex. May 5, 2018) (Alvarez, J.). The factors identified in *Lindsey* include: (i) issues of material fact; (ii) existence of substantial prejudice; (iii) clarity of grounds for default; (iv) default caused by good faith mistake or excusable neglect; (v) harshness; and (vi) whether the court would think itself obliged to set aside the default on defendant's motion. *See Lindsey*, 161 F.3d at 893; *see also Laino*, 2021 WL 2886013 at *12 (entering default judgment where defendant failed to appear).

20.     Consideration of *Lindsey* factors clearly demonstrates that default judgment is procedurally appropriate here. Because Defendant has failed to respond to the Complaint, its well-pled factual allegations are taken as true.[1] *Ramirez*, 2019 WL 4198857 at *8 (citing *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact") (citations omitted)). Consequently, there are no material issues of fact. *Id.* (citing *Bieler v. HP Debt Exch., LLC*, No. 3:13-cv-01609, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013)). Given that Defendant was properly served, and that he has chosen not to respond, a default judgment against him is neither substantially prejudicial to him nor harsh. *See id.* Conversely, delaying judgment would prejudice the public interest generally and the victims of Defendant's fraud specifically; the former by frustrating the Commission's mission, *see R&W Tech. Servs. Ltd. v. CFTC*, 205 F. 3d 165, 173 (5th Cir. 2000) (Congress increased the Commission's "enforcement

---

[1] Factual allegations are well-pled to sustain a default judgment so long as they meet Fed. R. Civ. P. 8's fair-notice standard. *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

9

powers, in part because of the fear that unscrupulous individuals were encouraging amateurs to trade in the commodities markets through fraudulent advertising") (citations omitted), and the latter by delaying relief designed to make them whole. The grounds for default are clearly established in that Defendant has not answered or otherwise properly responded to the Complaint, and the Clerk has properly entered default against him. *See Bieler*, 2013 WL 3283722 at *2.

21.     Further, the Commission's claims as stated in its well-pled Complaint (taken as true given Defendant's failure to respond) are substantively meritorious. As discussed below, these facts establish that Defendant, among other violations, repeatedly and with *scienter* engaged in core violations of the anti-fraud provisions of the Act and Regulations. Additionally, the requested relief is appropriate.

**D.     Castro Violated Section 6(c) of the Act and Commission Regulation 180.1 by Fraudulently Soliciting Customers to Trade Bitcoin Through GTC**

22.     Section 6(c)(1) of the Act makes it "unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with . . . a contract of sale of any commodity in interstate commerce, . . . any manipulative or deceptive device or contrivance, in contravention of [the Regulations]." 7 U.S.C. § 9(1) (2018). In support of Section 6(c)(1), the Commission has adopted Regulation 180.1(a), which makes it unlawful for any person, in connection with any contract of sale of any commodity, to intentionally or recklessly:

> (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;
>
> (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or]

10

> (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

17 C.F.R. § 180.1(a) (2021).

23.     To prove a violation of Section 6(c)(1) of the Act and Regulation 180.1, the Commission must show that Defendants (1) made a misrepresentation, misleading statement, or a deceptive omission; (2) with scienter; and (3) that the misrepresentations or omission were material. *CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1325 (11th Cir. 2018) (affirming summary judgment for CFTC, finding defendants violated Section 6(c) and 180.1(a)); *McDonnell*, 332 F. Supp. 3d at 717 (entering judgment against defendants for violations of Section 6(c)(1) and Regulation 180.1(a) following a bench trial where they operated a deceptive and fraudulent virtual currency trading scheme and misappropriated investor funds); *see also CFTC v. Gelfman Blueprint, Inc.*, No. 17-cv-7181 (PKC), 2018 WL 6320656, at *8-9 (S.D.N.Y. Oct. 16, 2018) (entering default judgment against defendants who violated Section 6(c)(1) and Regulation 180.1(a) by fraudulently soliciting and receiving funds from customers for the purpose of entering into contracts of sale of Bitcoin through electronic web-based trading platforms). Moreover, the deceptive conduct must pertain to a "contract of sale of any commodity in interstate commerce." *McDonnell*, 332 F. Supp. 3d at 717.   Here, the Commission satisfies each of these elements.

### 1.     Castro Engaged in Fraudulent Conduct by Making Misrepresentations

24.     Castro engaged in fraudulent conduct under Section 6(c)(1) of the Act and Regulation 180.1(a) by intentionally or recklessly making material misrepresentations with scienter to customers when soliciting them to speculate in Bitcoin through GTC.

25.     From the initial solicitation of customers, Castro deceived potential customers with misrepresentations concerning:  GTC's employment of more than 75 "master traders" with

11

years of trading experience; GTC's use of "cutting edge trading robots" trading "24 hours a day, 7 days a week;" and GTC's guarantee of specific daily earnings and referral bonuses.  Castro continued the deceit by causing false information to be posted to a GTC web site and the GTC Digital app, which misrepresented the purported profits being earned by and for customers, thereby perpetuating the fraudulent scheme.

### 2.     Castro Acted with Scienter

26.     The Commission can establish scienter under Section 6(c)(1) of the Act and Regulation 180.1(a) by showing that the Castro "knew the representations [he made] were false and were calculated to cause harm or by showing that the representations were made with a reckless disregard for their truth or falsity." *S. Tr. Metals,* 894 F.3d at 1326-27; *CFTC v. R.J. Fitzgerald & Co.,* 310 F.3d 1321, 1328 (11th Cir. 2002).  "[S]cienter is established if Defendant intended to defraud, manipulate, or deceive, or if Defendant's conduct represents an extreme departure from the standards of ordinary care." *S. Tr. Metals,* 894 F.3d at 1327; *R.J. Fitzgerald,* 310 F.3d at 1328; *see also McDonnell,* 332 F. Supp. 3d at 721-22.

27.     Castro acted knowingly or, at the very least, with reckless disregard for the truth when he solicited customers on behalf of GTC by participating in seminars with his co-defendants, and/or advertising GTC on his Facebook page and elsewhere.  Castro knew or must have known that the representations concerning the alleged expertise offered by GTC, and GTC's earnings and referral bonus plans were false.  Castro knew that GTC employed no traders, and neither created nor used any trading robots.  Accordingly, GTC customer capital was not "being traded in a real time environment, by our expert traders and cutting edge trading robots 24 hours a day, 7 days a week." (Compl. ¶ 22)  Accordingly, Castro acted with the requisite scienter.

### 3.      The Misrepresentations Were Material

28.      All of the fraudulent statements and omissions by Castro were material.  A statement or omission is material "'if a reasonable investor would consider it important in deciding whether to make an investment.'"  *McDonnell*, 332 F. Supp. 3d at 720 (quoting *S. Tr. Metals, Inc.*, 894 F.3d at 1327).  Account balances and profits "constitute information that a reasonable investor would consider important in trading commodity futures."  *CFTC v. Rosenberg*, 85 F. Supp. 2d at 448 (D.N.J. 2000); *CFTC v. Int'l Fin. Servs. (N.Y.), Inc.*, 323 F. Supp. 2d 482, 500-01 (S.D.N.Y. 2004) (finding that "reasonable investors would consider . . . the accuracy of [defendants'] representations regarding past customer gains and losses . . . important in making an investment decision" (quotations and citations omitted)).

### 4.      The Misrepresentations Were In Connection with a Contract of Sale of a Commodity in Interstate Commerce

29.      Castro's fraudulent acts were also in connection with, and contemporaneous with, contracts of sale of a commodity in interstate commerce.[2]  First, as explained previously, Bitcoin is a "commodity" within the meaning of Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2018). *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018) ("Virtual currencies can be regulated by [the] CFTC as a commodity. . . . They fall well-within the common definition of 'commodity' as well as the [Act's] definition of 'commodities' as 'all other goods and articles . . . in which contracts for future delivery are presently or in the future dealt in." (quoting 7 U.S.C. § 1a(9) (2018))), *reconsideration denied*, 321 F. Supp. 3d 366 (E.D.N.Y. 2018).  *See supra* Section IV.B.

---

[2]  Section 1a(13) of the Act, 7 U.S.C. § 1(a)(13) (2018), defines the term "contract of sale" to include sales, agreements of sale, and agreements to sell.

30. Second, Defendants' fraudulent scheme, which Castro promoted and participated in, relied on inducing customers to give them money to purchase Bitcoin on the customers' behalf. Castro communicated with customers through social media sites, and met with customers in, for example, Las Vegas, Los Angeles, Houston, and Miami, to solicit customers to place funds with GTC. This conduct satisfies the "in connection with" test. *See Chadbourne & Parke LLP v. Troice,* 571 U.S. 377,387 (2014) (fraud "in connection with" a purchase or sale of a security has involved victims *who took, who tried to take*, who divested themselves of, who tried to divest themselves of, or who maintained an ownership interest in financial instruments that fall within the relevant statutory definition) (emphasis added); *see also SEC v. Wyly*, 788 F. Supp. 2d 92, 120 (S.D.N.Y. 2011) (inducing the purchase of securities satisfies the "in connection with" element of SEC Rule 10b-5).

31. As alleged in the Complaint and detailed above, the presentations Castro participated in and advertised included numerous fraudulent representations regarding GTC's purchase and trading of Bitcoin. For example, Defendants falsely told GTC customers and prospective customers that with GTC's "automated trading software and monitoring system, trades are done automatic [sic] for members with no risk." To induce new customers to send funds, GTC also fraudulently claimed GTC employed "over 75 master traders" with years of "cryptocurrency" trading experience. (Compl. ¶ 22) These and the other misrepresentations about GTC's purported Bitcoin trading alleged in the Complaint satisfy the "in connection with" requirement of Section 6(c)(1) of the Act and Regulation 180.1(a). *McDonnell*, 332 F. Supp. 3d at 723 (holding that material misrepresentations and omissions and misappropriation of customer funds relating to proposed trading in virtual currency was in connection with contracts of sale of commodities in interstate commerce); *CFTC v. Hunter Wise*, 21 F. Supp. 3d 1317, 1347-48

14

(S.D. Fla. 2014) ("Hunter Wise misrepresented the rate of return and risk of the transactions. Victims of Hunter Wise's scheme testified that this information would have influenced their decision to purchase commodities. Therefore, the CFTC's allegations satisfy the 'in connection with' requirement."); *see also CFTC v. Vartuli*, 228 F.3d 94, 102 (2d Cir. 2000) (determining, in the context of Section 4b of the Act, that "[t]he intended and direct link between the advertisements and the currency trading rendered any misrepresentations in the advertising 'in connection with' the suggested futures transactions.").

## V.      ORDER FOR RELIEF

### A.      Permanent Injunction

32.      The Commission is authorized to seek, and the Court to impose, injunctive relief. 7 U.S.C. § 13a-1(a) (2018). Such relief may be sought against any person whenever it shall appear to the Commission that such person has engaged in any act or practice that violates the Act or Regulations.

33.      As described above, the well-pleaded facts of the Commission's Complaint, and the evidence submitted in support of its Motion, establish a reasonable likelihood that Castro will be a repeat violator of the Act and Regulations unless permanently restrained and enjoined by the Court. Therefore, Castro is permanently restrained, enjoined and prohibited from directly or indirectly:

     a.      Using or employing or attempting to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in violation of 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018);

b. In connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:  (i) use or employing, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (ii) make or attempt to make any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (iii) engage or attemp to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person, in violation of Regulation 180.1(a), 17 C.F.R. §180.1(a) (2021);

34. Castro is also permanently restrained, enjoined and prohibited from directly or indirectly:

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021), for his own personal account or for any account in which he has a direct or indirect interest;

c. Having any commodity interests traded on his behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f.    Applying for registration or claiming exemption from registration with the CFTC
      in any capacity, and engaging in any activity requiring such registration or
      exemption from registration with the CFTC, except as provided for in Regulation
      4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and/or

g.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R.
      § 3.1(a) (2021)), agent or any other officer or employee of any person (as that
      term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or
      required to be registered with the CFTC except as provided for in 17 C.F.R.
      § 4.14(a)(9) (2021).

**B.    Restitution**

35.    The Commission is authorized to seek, and the Court to impose, equitable
remedies for violations of the Act, including "restitution to persons who have sustained losses
proximately caused by such violation (in the amount of such losses)." 7 U.S.C. § 13a-1(d)(3)(A)
(2018).

36.    Restitution exists to restore the status quo and make the injured party whole.
*Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) (equitable restitution consists of
"restoring the status quo and ordering the return of that which rightfully belongs to the purchaser
or tenant"). Where, as here, a defendant engages in systematic and pervasive fraud, all funds
obtained by the illegal enterprise may be included in the calculation of restitution. *See
McDonnell*, 332 F. Supp. 3d at 726-27 (holding that in cases of pervasive fraud under the Act,
the appropriate calculation of restitution includes all customer losses even where only a subset of
those customers testify to the losses they sustained on the grounds that reliance on the
defendant's fraud is presumed); *see also Hunter Wise*, 21 F. Supp. 3d at 1352 (determining in
connection with violations of Section 6(c) of the Act and Regulation 180.1 that "[t]he systematic

17

and pervasive nature of [the defendant's] fraud necessitates restitution not only for the retail customers who testified to the losses they sustained due to [the defendant's] scheme, but for all of [defendant's] customers as well").

37.   Here, Castro and his co-defendants solicited at least $989,550 from GTC customers.

38.   Accordingly, Castro shall pay, jointly and severally with the other Defendants in this case, restitution in the amount of nine hundred, eighty-nine thousand, five-hundred, fifty dollars ($989,550) ("Restitution Obligation").

39.   Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

40.   To effect payment of the Restitution Obligation and the distribution of any restitution payments to GTC's customers, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall receive restitution payments from Castro and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

41.   Castro shall make Restitution Obligation payments, along with any payments of post-judgment interest, under this Order to the Monitor in the name "Castro, Rodrigo – Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies Castro and the name and docket number of this

18

proceeding.  Castro shall simultaneously transmit copies of the cover letter and the form of
payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three
Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

42.     The Monitor shall oversee the Restitution Obligation and shall have the discretion
to determine the manner of distribution of such funds in an equitable fashion to GTC's customers
identified by the CFTC or may defer distribution until such time as the Monitor deems
appropriate.

43.     Castro shall cooperate with the Monitor as appropriate to provide such
information as the Monitor deems necessary and appropriate to identify GTC's customers to
whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of
any Restitution Obligation payments.  Castro shall execute any documents necessary to release
funds that he has in any repository, bank, investment or other financial institution, wherever
located, in order to make partial or total payment toward the Restitution Obligation.

44.     The Monitor shall provide the CFTC at the beginning of each calendar year with a
report detailing the disbursement of funds to GTC's customers during the previous year.  The
Monitor shall transmit this report under a cover letter that identifies the name and docket number
of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission,
Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

45.     The amounts payable to each GTC customer shall not limit the ability of any GTC
customer from proving that a greater amount is owed from Castro or any other person or entity,
and nothing herein shall be construed in any way to limit or abridge the rights of any GTC
customer that exist under state or common law.

19

46.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each GTC customer who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by Castro to ensure continued compliance with any provision of this Order and to hold Castro in contempt for any violations of any provision of this Order.

47.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Castro's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

## C.     Civil Monetary Penalty

48.     Pursuant to 7 U.S.C. § 13a-1(d)(1) (2018), and 17 C.F.R. § 143.8 (2021), the CFTC is authorized to seek a civil monetary penalty that is not more than the higher of triple Defendant's monetary gain from each violation of the Act, or $187,432[3] per violation penalty.

49.     Taken as true, the allegations of the Complaint establish that Castro, who billed himself as a "founding member" and "international master" of GTC, advertised and participated in at least four specific presentations to GTC customers.  The allegations of the Complaint also establish that Castro and the other Defendants made numerous false representations at these four GTC events.

50.     The Court finds that a penalty of $749,728, representing the maximum per violation penalty for each of the presentations which Castro advertised and participated in (4 x $187,432), is appropriate given the gravity of Castro's violations.

---

[3] This is the inflation-adjusted maximum CMP for each violation for CEA violations occurring after Nov. 1, 2015.  *See* CFTC Annual Adjustment of Civil Monetary Penalties to Reflect Inflation – 2021, 86 Fed. Reg. 7802 (Feb. 2, 2021) (codified at 17 C.F.R. § 143.8 (2021)).

20

51.     Similarly, this civil monetary penalty is consistent with precedent finding that "the Court is free to fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent." *Cloud*, 2011 WL 1157530, at *12 (citations omitted).  In this circumstance,

> [P]enalties signify the importance of particular provisions of the Act . . . and act to vindicate these provisions in individual cases . . . Civil monetary penalties are also exemplary; they remind both the recipient of the penalty and other persons . . . that noncompliance carries a cost. To effect this exemplary purpose, that cost must not be too low or potential violators may be encouraged to engage in illegal conduct.

*CFTC v. Total Call Grp., Inc.*, No. 4:10–cv–00513, 2012 WL 1642196, at *12 (E.D. Tex. Mar. 30, 2012) (citations omitted).

52.     Accordingly, Castro is ordered to pay a civil monetary penalty in the amount of Seven-hundred, forty-nine-thousand, seven-hundred, twenty-eight dollars ($749,728) ("The CMP Obligation")

53.     Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2018).

54.     Castro shall pay the CMP Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181

Oklahoma City, OK 73169
(405) 954-6569 office
(405) 954-1620 fax
9-AMC-AR-CFTC@faa.gov

55.     If payment by electronic funds transfer is chosen, Castro shall contact Marie

Thorne or her successor at the address above to receive payment instructions and shall fully

comply with those instructions.  Castro shall accompany payment of the CMP Obligation with a

cover letter that identifies Castro and the name and docket number of this proceeding.  Castro

shall simultaneously transmit copies of the cover letter and the form of payment to the Chief

Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st

Street, N.W., Washington, D.C. 20581, and Aimée Latimer-Zayets, Chief Trial Attorney,

Commodity Futures Trading Commission, Division of Enforcement, 1155 21st Street, N.W.,

Washington, D.C. 20581.

## VI.     MISCELLANEOUS PROVISIONS

56.     Equitable Relief:  The injunctive and equitable relief provisions of this Order shall

be binding upon Castro and upon any persons who are acting in the capacity of agent, officer,

employee, servant, attorney, successor and/or assign of Castro, and upon any person acting in

active concert or participation with Castro who receives actual notice of this Order by personal

service or otherwise.

57.     Notices:  All notices required to be given to the Commission by any provision in

this Order shall be sent certified mail, return receipt requested, as follows:

Richard A. Glaser
Deputy Director
Commodity Futures Trading Commission
Division of Enforcement
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581

22

58.     Continuing Jurisdiction of this Court:   This Court shall retain jurisdiction of this

case to assure compliance with this Order and for all other purposes related to this action.


**IT IS SO ORDERED** on this <u>21st</u> day of <u>September</u>, 2021.


**SIM LAKE**
**UNITED STATES DISTRICT JUDGE**

23